UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 12-CR-282

KIRK DAVID, ET AL.                          SECTION "B" (4)

## ORDER

Before the Court is Plaintiff, United States of America's, ("United States") **Motion to Stay and for Reconsideration of Order to Disclose Witnesses Pursuant to Rule 12 of the Federal Rules of Criminal Procedure (R. Doc. 89)**, seeking reconsideration of the Court's Order directing the United States to disclose the list of the eyewitnesses which it intends to call in its case-in-chief to Defendant, Kirk David, ("David"). The Motion is Opposed, (R. Doc. 93) the United States has filed a Reply, (R. Doc. 97), and David has filed a Sur-Reply. (R. Doc. 100). The motion was noticed for submission on July 3, 2013, and heard on the briefs on that date.

## I.  Background

On November 1, 2012, the United States brought this indictment against David as well as six other persons for knowingly possessing with intent to distribute "five kilograms or more of cocaine hydrochloride," and 100 kilograms or more of marijuana." (R. Doc. 1, pp. 1-2).[1]  Cocaine is a

---

[1]These persons were Rafael Garcia, Amanda Labra, Todd Kraemer, Patrick Wooten, and Johnny Theriot. (R. Doc. 1, p. 1).

Schedule II narcotic drug controlled substance, whereas marijuana is a Schedule I drug controlled substance. *Id.*  The United States alleges that David's actions violated 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), § 841(b)(1)(B), and 21 U.S.C. § 846. *Id.* at 2.[2]

On November 2, 2012, a warrant for David's arrest was executed.  (R. Doc. 16).  On November 5, 2012, David made an initial appearance before U.S. Magistrate Judge Knowles, at which time the indictment was read to him in summary fashion, and he requested court-appointed counsel.  (R. Doc. 8).  The federal public defender was appointed to represent David on the same day.  (R. Doc. 9). David's counsel made an initial appearance on November 7, 2012, at which time David was remanded to the custody of the U.S. Marshal.  (R. Doc. 23).

On May 22, 2013, David submitted a motion requesting that the United States file written notice of certain evidence which it intends to use at trial, including, *inter alia*, a list of the United States's eyewitnesses.  (R. Doc. 78).  On June 7, 2013, the Court granted David's Motion in part, ordering the United States to notify David "as to the identity of any eyewitnesses which the United States intends to call in its case-in-chief. . . .  The United States is further required to notify David of any updates to this list of eyewitnesses as such information becomes available."  (R. Doc. 84, p. 7).

Thereafter, the United States filed the instant motion, which seeks reconsideration of only that above-quoted portion of the Court's Order.  The motion is opposed.

## II.   Standard of Review

The Federal Rules of Criminal Procedure ("Criminal Rules") do not provide for "reconsideration" of prior Orders.  However, the Fifth Circuit has acknowledged that motions for "reconsideration" can be applied to criminal cases as a general matter.  *See United States v.*

---

[2]In the Indictment, Counts 2-4 involve Garcia, Theriot, Labra, as well as "others known and unknown to the Grand Jury," but do not mention David by name.  (R. Doc. 1, pp. 1-3).

*Greenwood*, 974 F.2d 1449, 1466 (5th Cir. 1992). Other courts have applied the Federal Rules of Civil Procedure to circumstances where the Criminal Rules do not provide a ready answer. *See, e.g.*, *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United States v. Healy*, 376 U.S. 75, 84 (1964) ("motions to reconsider . . . are ordinary elements of federal practice that exist in criminal prosecutions despite their omission from the Rules of Criminal Procedure.").

     The ruling by which this Court granted David's request is a non-dispositive pretrial matter. As such, review under Federal Rule of Civil Procedure ("Civil Rule") 60 is not applicable, as this Rule addresses final judgments and final Orders. *See* Civil Rule 60 (Advisory Comment Note, explaining that the use of the word "final" emphasizes the character of the judgments, orders[,] or proceedings from which Civil Rule 60(b) affords relief); *see also Benson v. St. Joseph Regional Health Center*, 575 F.3d 542, 547 (5th Cir. 2009) (applying Civil Rule 60 to final orders and judgments). Similarly, Civil Rule 59 does not strictly apply because this Rule pertains to the alteration or amendment of "judgments" where there has been no trial. Civil Rule 59(e); Civil Rule 54(a) ("'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies.").

     Instead, for this type of pretrial ruling, the Court has the power to "afford such relief from them as justice requires." *See* Civil Rule 60 (Advisory Comment Note to 1946 amendment). In these cases, courts have applied the "less stringent" requirement under Civil Rule 54(b). *See Century Products Co. v. Cosco, Inc.*, 2003 WL 251957, at *5 (N.D. Tex. 2003). Civil Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." *Id.*

     In keeping with the Civil Rule 54(b) standard, the Fifth Circuit has held that "[i]t is a well

established rule of trial procedure that a district court may reconsider . . . a previous interlocutory order at its discretion."  *Holoway v. Triola*, 172 F.3d 866, 1999 WL 129656, at *1 (5th Cir. Feb. 2, 1999) (Table, Text in Westlaw) (citing Civil Rule 54(b)); *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010).  "The exact standard applicable to the granting of a motion under Civil Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Civil Rule 59(e)."  *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474-75 (M.D. La. 2002).[3]  Courts have found that Civil Rule 54(b) permits a court to reconsider its decision and reverse it for any reason deemed "sufficient."  *Saqui v. Pride Central America, LLC*, 595 F.3d 206, 211 (5th Cir. 2010).

## III.   Analysis

### A.     Motion to "Stay"

The United States' Motion is styled as both a motion to "stay" as well as one for "reconsideration."  Specifically, the United States requests that the Court's prior Order be "stayed" until such time as the Court issues its ruling as to the United States' Motion for Reconsideration.  *See* (R .Doc. 89-1, p. 4).

Below, the Court reaches the merits of the United States' Motion for Reconsideration.  As such, the United States' request for a "stay" of its discovery order is now denied.

---

[3]Accordingly, some sections of this Court have referenced the factors under Civil Rule 59(e) as a guide in determining whether the movant has provided reasons for reconsideration of an interlocutory order.  *See, e.g.*, *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 284 F.R.D. 146, 151-53 (E.D. La. 2012) (Brown, J.); *Castrillo v. Am. Home Mtg. Serv'ing Co.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at * 2 (E.D. La. Apr. 16, 2009) (Duval, J.).  The four factors under that Rule are: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

**B.    Disclosure of Eyewitness Identities Which the United States Intends to Call in Its Case-in-Chief**

### 1.    Criminal Rule 16's Contemplation of Disclosure

The United States argues that under Criminal Rule 16, disclosure of the each parties' witnesses, although unstated, is not contemplated in a criminal case, as "it is not in the interest of the effective administration of criminal justice to require that the United States or the defendant be forced to reveal the names and addresses of its witnesses before trial."  (R. Doc. 89-1, p. 3) (quoting Advisory Committee Note C, 1974 Amendment).  In opposition, David contends that the Court correctly noted that under Rule 16, the Fifth Circuit has not specified whether "eyewitness information" is discoverable.  (R. Doc. 93, p. 9).

Criminal Rule 12(b)(4), under which David brought his initial motion, states that "[a]t the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant *may be entitled to discover under Rule 16.*"  *Id.* (emphasis added).

The Court noted in its prior Order that the Fifth Circuit has not yet determined whether disclosure of "the identity of any eyewitnesses which the United States intends to call in its case-in-chief" is discoverable.  Moreover, Criminal Rule 16 is silent as to whether the district court has discretion to order production of eyewitness information that the United States intends to use in its case-in-chief.  The United States does not argue that the plain language of Rule 16 mandates a different outcome, and has cited no controlling precedent which has quoted this Advisory Note law favorably.

The Fifth Circuit has noted that although criminal defendants have no *constitutional* right to pretrial discovery of "witnesses" in non-capital cases, a trial court's Order instructing the government to produce such a pretrial witness list is a discovery order, which is reviewed under the abuse of

5

discretion standard. *United States v. Aguilar*, 503 F.3d 431, 434 (5th Cir. 2007) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). In this case, the record does not reflect any set deadline by which the United States must produce the list of any witnesses prior to trial, and does not explicitly state that such disclosure is impermissible. *See* (R. Doc. 87). Therefore, the Court's prior Order mandating disclosure of the United States' list of eyewitnesses did not contravene the schedule set by the presiding U.S. District Judge. Thus, the Court's discretionary authority to order the production of a list of *eyewitnesses* remains intact. *See United States v. Edmonson*, 659 F.2d 549, 551 (5th Cir. 1981). *See* (R. Doc. 84, p. 7).

Accordingly, the United States' motion for reconsideration of the Court's Order is denied as it pertains to producing the identity of any eyewitnesses which the United States intends to call in its case-in-chief. The United States shall disclose the identities of those eyewitnesses which it intends to call in its case-in-chief no later than seven (7) days after the issuance of this Order.

## 2.     Broad Construal of Order

The United States also argues for the first time that disclosure of a list of the "names and locations" of "eyewitnesses and confidential informants" may place the safety of those individuals in immediate danger, because "the drug trade is a high risk business" which carries "the inherent possibility that its purveyors may be killed." (R. Doc. 89-1, p. 1). As such, David should bear a heavy burden to show that disclosure is "necessary and relevant" to his defense. *Id.*

However, according to the United States, instead of presenting evidence of why the identities of eyewitnesses are material to David's defense in this matter, David has elected to paint "with a broad brush" by requesting that "all eyewitnesses involved in this case be produced." *Id.* at 3; (R. Doc. 97, pp. 4-5). It therefore contends that David's request should be denied. (R. Doc. 89-1, p. 2).

In opposition, David argues that the Court's Order did not create a broad right of disclosure

6

in the information sought, but rather exercised the discretion which it was permitted to do in connection with disclosure of eyewitness identities. (R. Doc. 93, p. 10). David contends that within the limited scope of discovery ordered by the Court, "[p]resumably there are individuals who have made identifications of . . . David, associating him with the illegal activities alleged in the indictment. In the event that any one or more of these eyewitnesses was improperly led to select Kirk David's photograph in a photo array or point him out in a physical lineup, David is entitled to know the circumstances of that identification procedure." (R. Doc. 100, p. 2).

The Court finds that the United States' characterization of the Court's Order is misplaced. The Court's Order only required the United States to disclose to David "the *identity* of any *eyewitness* which the United States *intends* to call in its *case-in-chief*." (R. Doc. 84, p. 8) (emphasis added). The Court's Order did not extend to "confidential informants," or the "whereabouts" of any persons. *See id.* Further, the Court's Order extended only to those eyewitnesses whom the United States "intends" to call in its "case-in-chief;" it did not extend to any eyewitnesses whom the United States *contemplated* calling in its case-in-chief, or to eyewitnesses whom the United States intended to call at any subsequent stages of the trial, if reached.[4] The only possible "expansion" of the Court's Order was its routine requirement that the United States was required to supplement its eyewitness disclosure as additional eyewitnesses were added.

Thus, the Court finds that the Order was sufficiently narrow to satisfy the United States' concerns that it will be read to require more "generalized" discovery.

---

[4]As such the cases which the United States cites in support of this contention are inapposite to resolving the present inquiry. *Rovario v. United States*, 353 U.S. 53, 60-61 (1957), *United States v. Evans*, 941 F.2d 267, 273 (5th Cir. 1991), and *United States v. De Los Santos*, 810 F.2d 1326 (5th Cir. 1987) were all cases which analyzed potential disclosure of confidential informants and the standard developed for determining whether the United States's assertion of the "informant's privilege" survived a for-cause challenge. This category of persons is plainly outside the scope of the Court's Order and the Court declines to consider their impact for purposes of reconsideration.

C.      **Entry of a Protective Order**

Finally, the United States argues that in this particular drug-trafficking case, the father of one of David's co-defendants, Amanda Labra, who is a known member of a Mexican drug cartel, has "made it known that he would send representatives to the United States to kill anyone responsible for [Labra's] arrest."  (R .Doc. 89-1, p. 2).  *Id.*  In light of this fact, the United States argues that the dangers of witness intimidation, subornation of perjury, and actual injuries are particularly acute.  *Id.* at 3.

David does not contest the validity of this concern, but proposes that the Court can enter a protective order to protect the identity of any such persons prior to the time they offer testimony during the United States' case-in-chief.  (R. Doc. 100, pp. 1-2).  David argues that entry of a protective order will simultaneously ensure the safety of any such eyewitnesses, while preserving David's "constitutional rights."  *Id.*

The Court finds that the United States' concern over the safety of eyewitnesses, especially in light of the explicit death threat levied against anyone deemed "responsible" for the arrest of one of David's co-defendants, would be improvident to ignore.  Under Criminal Rule 16(d)(1), "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  *Id.*  Accordingly, the Court finds that entry of a protective order governing the disclosure of the identities of any such eyewitnesses prior to the time they testify will strike the appropriate balance between the safety of any eyewitness within the scope of the Court's Order, and preservation of Defendants' entitlement to discover such information pursuant to that Order.

Therefore, those eyewitness identities disclosed by the United States pursuant to this Order shall be disclosed only to David's attorney of record, and David's attorney shall keep their identities strictly confidential until they are called to testify in this case, or until such time as disclosure is

mandated by the presiding U.S. District Judge.

## IV.   <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Plaintiff, United States of America's, ("United States") **Motion to Stay and for Reconsideration of Order to Disclose Witnesses Pursuant to Rule 12 of the Federal Rules of Criminal Procedure (R. Doc. 89)** is **GRANTED** in part and **DENIED** in part.

The Motion to stay is **DENIED** as to the request to stay production of a list of all eyewitnesses which the United States intends to call in its case-in-chief.  The United States shall produce to David a list of all eyewitnesses it intends to call in its case-in-chief no later than seven (7) days after the issuance of this Order.

The Motion for reconsideration is **PARTIALLY GRANTED** only to the extent that the disclosure of the eyewitness identities is subject to a protective order restricting the disclosure to David's attorney of record; who shall keep the witness' identities confidential, until such time as each witness is called to testify at the trial of this matter, or an earlier time as ordered by the presiding U.S. District Judge.

New Orleans, Louisiana, this 9th day of August 2013.

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**